NOTICE

Decision filed 08/03/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 200380-U

NO. 5-20-0380

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-MR-951 |
| SHAWNTAE COLLINS, | ) ) | Honorable Christopher P. Threlkeld, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MOORE delivered the judgment of the court.
Presiding Justice Boie and Justice Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court erred in granting the plaintiff's motion for summary judgment in a declaratory judgment action where genuine issues of material fact existed as to the existence and availability of uninsured motorist coverage.

¶ 2    The defendant, Shawntae Collins, appeals the circuit court of Madison County's October 23, 2020, order granting State Farm Mutual Automobile Insurance Company's motion for summary judgment in its declaratory judgment action brought requesting the circuit court to declare that uninsured motorist coverage was unavailable to the defendant. The defendant contends that genuine issues of material fact exist which preclude the granting of summary judgment. For the following reasons, we agree and reverse the circuit court's order.

1

¶ 3                                    I. BACKGROUND

¶ 4     The defendant was involved in a hit-and-run motor vehicle accident on July 11, 2018, while traveling from her home in Wood River, Illinois, to work near downtown St. Louis, Missouri. It is believed by the defendant that the at-fault hit-and-run motor vehicle was a semi-tractor-trailer owned and operated by Oberg Freight Company (Oberg). On the date of the accident, the defendant was insured by an automobile insurance policy through the plaintiff, State Farm Mutual Automobile Insurance Company. That insurance policy, *inter alia*, provided coverage for uninsured motorist claims.

¶ 5     Following the July 11, 2018, accident, the defendant retained counsel to represent her regarding her alleged property damage and personal injuries. During her attorney's investigation of the facts surrounding the case, correspondence with Oberg's alleged insurer at the time of the accident, Great West Casualty Company (Great West), was exchanged. In said correspondence, dated December 31, 2018, Eva Teut, an apparent liability claims adjuster for Great West, wrote the following pertinent information:

> "In any event, through the GPS of our unit we have confirmed our unit was not in the area at the alleged time of this incident, [the driver] was 60 miles northwest of St. Louis, Missouri. *** Therefore, based on our investigation[,] we have no alternative but to respectfully deny your clients [*sic*] claim. It is our position this is a case of mistaken identity at best. In any event, our GPS is undisputed proof the alleged unit is [*sic*] nowhere near the location of this loss, nor does our GPS have the unit on I-55/I-44 in MO at any time on 7/11/18."

The correspondence also indicated the letter was regarding "O/Insured: Oberg Freight Company, O/Driver: Paul Peterson." Following the receipt of this information from Great West, the

2

plaintiff was made aware of the defendant's intent to make an uninsured motorist claim regarding the July 11, 2018, accident.

¶ 6    On May 6, 2019, an examination under oath of the defendant was conducted by the plaintiff regarding her claim for uninsured motorist coverage. During the examination, the defendant testified, *inter alia*, to the facts surrounding the accident. The defendant testified that she was driving alone in her vehicle on her way to work in St. Louis. She was driving in the lane adjacent to the farthest left-hand lane. The first knowledge she had of the at-fault vehicle, or its driver, was at the time of impact. She did not see the vehicle prior to impact. The vehicle that struck her was a semi-tractor-trailer (truck) which impacted the left rear side of her vehicle. She then testified that, after the impact, while still traveling in her vehicle on the roadway, she maneuvered her vehicle directly behind the truck and followed it as it proceeded. She initially believed the driver of the truck was going to stop and pull over, but the driver did not. Once she realized the driver of the truck was not going to stop, she got out her cell phone and took a photo of the rear of the truck. Sometime thereafter, she reported the hit-and-run accident to the police.

¶ 7    The defendant confirmed during the examination that it was her belief that she was hit by an Oberg truck. She further confirmed that she photographed said truck and that plaintiff's exhibit "B" was an accurate copy of said photograph. She testified that she held the belief that the Oberg truck collided with her vehicle despite Great West's claim in its correspondence that GPS evidence demonstrated it was not possible for the Oberg truck to have been involved in the accident. The defendant also testified that it was her belief that the Oberg truck was driven by Paul Peterson and that the Oberg truck was insured by Great West as a result of the correspondence her attorney received from Great West liability adjuster Eva Teut.

3

¶ 8    On July 16, 2019, the plaintiff filed an action for declaratory judgment. In its complaint, the plaintiff noted that the defendant had testified in her examination under oath that the vehicle which struck her was owned by Oberg and was driven by an Oberg employee, Paul Peterson, and further testified that Oberg and Mr. Peterson were insured by Great West at the time of the accident. The complaint, *inter alia*, then asked the court to "determine and adjudicate the rights and liabilities of the parties with respect to the policy of insurance described above" and specifically find that uninsured motorist coverage was not applicable in this matter.

¶ 9    On September 16, 2019, the defendant filed her answer to the plaintiff's complaint. The defendant admitted the majority of the plaintiff's complaint, but stated the following regarding her previous allegations:

> "Defendant Collins admits that she has alleged that the vehicle claimed to have struck her on July 11, 2019 [*sic*], was owned by Oberg Freight and driven by Oberg Freight employee Paul Peterson. Defendant Collins lacks sufficient knowledge to form a belief as to the truth that Oberg Freight and its driver had a valid insurance policy through Great West Casualty Company at the date and time of the claimed accident, although Defendant Collins further states that Great West Casualty Company has specifically denied liability for the July 11, 2019 [*sic*] collision according to a letter dated December 31, 2018."

¶ 10    The defendant further argued that the uninsured coverage provided by the plaintiff is applicable because the policy further defined an uninsured motorist as a "land motor vehicle *** insured or bonded for bodily injury liability at the time of the accident; *** but the insuring company denies that its policy provides liability coverage for compensatory damages that result from the accident."

4

¶ 11    On September 24, 2019, the plaintiff filed a motion for summary judgment in the declaratory judgment action. In the motion, the plaintiff reiterated the points highlighted in its complaint, stating that because the defendant testified that she believed the Oberg truck driven by Paul Peterson had struck her vehicle and at the time of the accident it was insured by Great West, the uninsured motorist coverage was not applicable.

¶ 12    On October 24, 2019, the defendant filed her response to the plaintiff's motion for summary judgment. In that response, the defendant stated that she "admits that she believes a vehicle operated by Oberg Freight struck her vehicle, and that she believes this vehicle was insured by Great West Casualty Company." However, she denied that the vehicle did not qualify as an uninsured motorist vehicle because of the additional language in the policy as previously discussed in her answer.

¶ 13    On July 10, 2020, the plaintiff filed a supplemental memorandum regarding its summary judgment motion. In that memorandum, newly received correspondence dated April 1, 2020, from Great West was attached as an exhibit in which the insurance company stated that it had spoken to Oberg and determined that Oberg does not lease or loan out their trucks and therefore an Oberg driver would have been operating the truck. This was apparently filed in an attempt to settle the possible issue as to whether or not a third-party driver or independent operator could have been driving the truck.

¶ 14    On September 18, 2020, the defendant's attorney emailed Eva Teut, the adjuster for Great West, a prepared affidavit for her to authorize. That affidavit, if sworn to and signed by Ms. Teut, would have stated, *inter alia*, the following: that she was an employee for Great West, that she was the adjuster assigned to handle and investigate the claim regarding the defendant and Oberg, that she had firsthand knowledge of the GPS data from Oberg's trucks, that she was

5

familiar with the records related to this accident, that she authored the December 31, 2018, and April 1, 2020, correspondence referenced by the plaintiff and relied upon by the defendant, and that the information relayed in those letters was based upon personal knowledge of the matters discussed therein. On September 21, 2020, the defendant's attorney sent by facsimile the same prepared affidavit for Ms. Teut to authorize. Neither of the copies of the affidavit appear to have ever been authorized or returned by Ms. Teut.

¶ 15    On October 5, 2020, the defendant filed a motion to stay ruling on plaintiff's motion for summary judgment wherein the defendant asked the circuit court to postpone ruling on the motion for summary judgment until the defendant had an opportunity to obtain documents she deemed controlling on the material issues underlying the coverage issue. In particular, the defendant stated that the alleged insurer of Oberg, Great West, a nonparty to the declaratory judgment action, had denied her requests to produce documents relating to the coverage issues, including copies of insurance policies and GPS data showing the location of the alleged at-fault truck. The defendant further alleged that she had "filed a request for the Saint Louis City Circuit Court to issue a Summons for service on Oberg Freight Company" and that she would be "directing a subpoena to Oberg Freight Company's Custodian of Records to provide information relating to GPS data for the vehicle that [she] claims struck her."

¶ 16    In conjunction with the motion to stay, the defendant also filed two supporting affidavits. One was an affidavit from the defendant, herself, and the other was an affidavit from her attorney. Relevant to this matter, the affidavit from the defendant's attorney attempted to testify, *inter alia*, to the following facts: that the attached correspondence from Great West were true and accurate copies of the letters, that insurance adjuster Eva Teut's duties included investigating the facts regarding the accident and obtaining evidence related thereto, that Eva Teut was the

6

assigned adjuster for the July 11, 2018, accident, and that she was familiar with the record keeping practices of Oberg with respect to the accident and the GPS system of the alleged at-fault truck.

¶ 17 On October 20, 2020, the plaintiff filed a motion to strike the affidavit of the defendant's attorney on the grounds that it was improper under Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013) because the affidavit ran afoul of the requirement that affidavits "shall be made on the personal knowledge of the affiant; set forth with particularity the facts upon which the claim, counterclaim or defense is based; … shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness can testify competently thereto."

¶ 18 Without explicitly ruling on the motion to stay or the motion to strike the defendant's attorney's affidavit, the circuit court entered an order on October 23, 2020, granting the plaintiff's motion for summary judgment. The circuit court in its granting of the motion for summary judgment simply stated, "Case was called on Plaintiff's Motion for Summary Judgment and both parties were present by counsel and argument was heard. The Court requested further briefing and being fully advised in the premises, GRANTS the Plaintiff's Motion for Summary Judgment." The circuit court did not articulate any reasoning for its decision.

¶ 19 This timely appeal followed.

¶ 20                                    II. ANALYSIS

"The purpose of summary judgment is not to try a question of fact but to determine if one exists. [Citation.] Summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most

7

favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. [Citations.] Summary judgment should not be granted if the material facts are in dispute or if the material facts are not in dispute but reasonable persons might draw different inferences from the undisputed facts. [Citation.] Although summary judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should be allowed only where the right of the moving party is clear and free from doubt. [Citation.] In appeals from summary judgment rulings, the standard of review is *de novo*. [Citation.] When *de novo* review applies, the appellate court performs the same analysis that the trial court would perform. [Citation.] A trial court's grant of summary judgment may be affirmed on any basis supported by the record." *Wells Fargo Bank, N.A. v. Norris*, 2017 IL App (3d) 150764, ¶ 19.

¶ 21 Here, the circuit court found that the plaintiff was entitled to summary judgment, declaring that the defendant is not entitled to uninsured motorist coverage under the insurance policy. The relevant insuring agreement language located in the plaintiff's insurance policy allowed for uninsured motorist coverage as stated as follows: "*We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be: 1. sustained by an *insured*; and 2. caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle* as a motor vehicle." The insurance policy further defines an "uninsured motor vehicle" as follows:

"*Uninsured Motor Vehicle* means a land motor vehicle:

1. The ownership, maintenance, and use of which is:

a. not insured or bonded for bodily injury liability at the time of the accident; or

8

b. insured or bonded for bodily injury liability at the time of the accident; but

(1) the limits are less than required by the financial responsibility act of Illinois; or

(2) the insuring company:

(a) denies that its policy provides liability coverage for compensatory damages that result from the accident; or

(b) is or becomes insolvent; or

2. a 'hit-and-run' land motor vehicle whose owner or driver remains unknown and which strike:

a. the *insured*; or

b. the vehicle the *insured* is occupying and causes *bodily injury* to the *insured*."

¶ 22   On appeal, both the plaintiff and the defendant largely focus their arguments on the latter definition of "uninsured motor vehicle" as described in paragraph 2. The parties specifically debate whether the owner or driver of the "hit-and-run" vehicle remains "unknown" given the circumstances of this case and the testimony given by the defendant in her examination under oath. However, despite the focus put forth by both parties regarding these issues, we find that the issue of whether or not the driver is "known" or whether the defendant's testimony in her examination under oath constituted judicial admissions, do not need to be addressed by this court because they are not dispositive of this appeal. Further, because the trial court felt it was not necessary to articulate its reasoning for granting the motion for summary judgment in its October

23, 2020, order, we decline to speculate as to the trial court's reasoning for its decision or expand our analysis to define or characterize the defendant's testimony in her examination under oath.

¶ 23　　This court finds that there exist clear issues of material fact, outside of those emphasized by the parties, which prevent the granting of summary judgment. Outside of the "hit-and-run" provision discussed in paragraph 2 of the above excerpt from the at-issue insurance policy, the policy articulates a number of other circumstances which could result in uninsured motorist coverage being available to the defendant.

¶ 24　　The first of these issues is whether the vehicle is "insured or bonded for bodily injury liability at the time of the accident."[1] There is no certified insurance policy in the record which demonstrates that Great West insures Oberg. The only information related to whether Oberg is insured by Great West located within the record is correspondence between the defendant's counsel and an apparent representative of Great West, and the testimony from the defendant in her examination under oath in which she states that she believes Great West insures Oberg. However, mere correspondence from a source which purports to be an agent of an insurer is not evidence that can properly be considered in a motion for summary judgment. See *Garland v. Sybaris Clubs International, Inc.*, 2019 IL App (1st) 180682, ¶ 37 ("In addressing a motion for summary judgment, a trial court may not consider evidence or testimony that would not be admissible at trial."). We acknowledge that the defendant's attorney attempted, on at least two different occasions, to reach Ms. Teut and have her authorize an affidavit to submit to the court which would have attested to and verified the claims stated in the correspondence; however, this affidavit was never signed, or at least is not contained within the record. Also, we acknowledge

---

[1]For the sake of clarity in our discussion, we assume that the Oberg truck identified by the defendant is, in fact, the vehicle which struck the defendant. However, this assumption should in no way be construed as a finding of such that would be binding upon the parties or the trial court on remand.

that the defendant's attorney attempted to testify in his October 5, 2020, affidavit to some of the same facts that he attempted to have Ms. Teut testify to in her affidavit, including that Ms. Teut's duties included investigating the facts regarding the accident and obtaining evidence related thereto, that Ms. Teut was the assigned adjuster for the July 11, 2018, accident, and that Ms. Teut was familiar with the record keeping practices of Oberg with respect to the accident and the GPS system of the alleged at-fault truck. Despite the circuit court not ruling on the plaintiff's motion to strike the defendant's attorney's affidavit, we find the motion to be well taken as the defendant's attorney lacks the personal knowledge required to be able to testify to the facts stated in his affidavit and known by Ms. Teut. Thus, those allegations related to Ms. Teut in the defendant's attorney's affidavit cannot properly be considered when determining a motion for summary judgment. See *Garland*, 2019 IL App (1st) 180682, ¶ 37; see also Ill. S. Ct. R. 191 (eff. Jan. 4, 2013).

¶ 25    Moreover, while the defendant testified that she believed Oberg was insured by Great West, she testified so based upon her understanding as derived from the correspondence sent by Ms. Teut to her attorney. Thus, the defendant lacks any firsthand knowledge regarding the relationship or lack thereof between Oberg and Great West. The defendant further clarified this testimony in her answer to the plaintiff's complaint when she stated that she "lacks sufficient knowledge to form a belief as to the truth that Oberg Freight and its driver had a valid insurance policy through Great West Casualty Company at the date and time of the claimed accident." She further pointed out that "Great West Casualty Company has specifically denied liability for the July 11, 2019 [*sic*] collision according to a letter dated December 31, 2018."

¶ 26    Thus, without a certified copy of the insurance policy or testimony from an individual with firsthand knowledge of such coverage, this court cannot find that insurance coverage exists

11

at this time for Oberg. Therefore, considering that there is an issue of material fact as to whether the Oberg truck and its driver were insured at the time of the accident, the granting of summary judgment declaring that the uninsured motorist coverage was not applicable was in error.

¶ 27 Assuming, *arguendo*, that the issue of the existence of insurance coverage was settled, there would still remain multiple issues of fact which would preclude summary judgment. There is no evidence to the amount of coverage and whether its limits meet or exceed that required by the Illinois Safety and Family Financial Responsibility Law. 625 ILCS 5/7-601 (West 2020). Also, there is no evidence as to whether or not Great West is a solvent company capable of fulling its would-be obligations under any existing policy. Moreover, if we are to consider the December 31, 2018, correspondence, there is evidence that Great West is denying "that its policy provides liability coverage for compensatory damages that result from the accident," thereby creating a genuine issue of material fact as to whether some provision of the policy may exclude insurance coverage for this accident.

¶ 28 Therefore, because we find that genuine issues of material fact exist regarding the existence and applicability of bodily injury liability insurance coverage for the Oberg vehicle, we must reverse the trial court's granting of summary judgment and remand for further proceedings. We additionally note that this decision effectively stays the proceedings in the circuit court until the parties are able to fully develop the record as to the matters identified herein, including the issue of whether the Oberg vehicle was correctly identified as the vehicle that struck the defendant, which remains an issue as well.

¶ 29                                III. CONCLUSION

¶ 30 For the foregoing reasons, we reverse the circuit court's October 23, 2020, order granting summary judgment in favor of the plaintiff and remand for further proceedings.

12

¶ 31    Reversed and remanded.